We'll hear argument next in Pennsylvania Manufacturers' Association v. Rosselli Enterprises, 16-1707. Good morning, Anthony Piazza for Rosselli. You have not reserved any time for rebuttal, is that correct? I did not, correct. May it please the Court, we have three arguments that I wanted to make this morning. First is that summary judgment should have been denied pursuant to Rule 56D. Second, that the lower court abused its discretion in denying discovery to Rosselli. And last, that summary judgment was wrongfully denied to PMA, wrongfully provided to PMA. With respect to the 56D application, Rosselli submitted a solid and comprehensive 56D affidavit demonstrating that Rosselli was not allowed to see significant materials which were solely in PMA's possession, which go against the holdings in JASCO Tools in San Filippo. They were very material to Rosselli's defense, and the Court only allowed Why couldn't all of the information that led to the 56D situation have been found out during the discovery period? Well, Your Honor, it's a good question. PMA represented to the Court and Counsel that all that Rosselli needed to see was in this cinch system, which is basically a summary of log notes. Right. And we should look at the cinch system, and that would be enough. They also said it a couple times along the way to the Court and Counsel that all, the entire claims file was in cinch. That was later proven to be false. Also, PMA also indicated that it would be too burdensome to disclose. Right, but there came a time when the Court let you look at further documentation of five claims, right? Correct. Five out of 169 files. And at that point, you were in a position to say, okay, we're not getting enough, and you didn't. I mean, and you never asked for a custodian of the documents to testify early on as to exactly how things were structured, what documents there were, what they weren't. You just accepted what the other side was saying, but you could have had a deposition early on of somebody who is responsible for all these documents and figured out exactly what you needed based on that. You did it later, but after the document discovery was closed, or the non-deposition discovery was closed, and then you complained. But that last deposition, which is the basis of your argument now, could have been done at the outset. Understood, Your Honor. That being said, if we look at the record, there were a series of orders by the magistrate which left the door open to further documentary demands. And it wasn't until, I believe, the April... Left the door open with some skepticism, but okay, left the door open. Understood. Acknowledged. But they did leave, the judge did leave the door open. It wasn't until, I believe, the April 15th, the 2015 order, where the judge said, that's it, I'm closing the door. No more demands for documents. And we did timely appeal that. So, again, PMA represented that the cinched log notes would be complete. They were not. They would also be too burdensome to produce, which turned out would be not. You did get five cases, and not just a random five cases, but the five biggest claims. Can you tell us briefly, in summary, what you found in the complete documents of those five cases that indicates that an inquiry into the other 164 cases would yield great returns if you similarly had access to the underlying documents there? So, in response, Your Honor, I believe the Boyden, the Gallo, and especially the Hayes cases, all counsel found some mismanagement by PMA, especially the Hayes case in which PMA admittedly blew a statute of limitations. But there was no harm from that, was there? Understood. And the only thing about blowing the statute of limitations was that a lawyer said something like, well, you know, there was a potential problem here, but it never eventuated. Is there anything that — so that indicates that you should be looking for mismanagement and serious recalculation of the damages in all of those cases? Well, Your Honor — Can you identify one of the five cases where there is some clear evidence that the — as to those cases, the calculation of the premium would be different? Well, Your Honor, I guess if you don't mind, I'll pivot to a different issue, which was — because, of course, any kind of question could be — the answer could be misleading because there needs to be more. But I'd like to know what is the showing? Because the issue here is whether the calculation of the premium was wrong. And if there is anything that you found in those five cases that indicated that the contribution to the premium calculation of those five cases was miscalculated, I would like to know. Your Honor, I believe it's those three cases that I mentioned. Boyden — Well, tell — okay, so you say there are three cases. Tell me what in those three cases demonstrates that the premium was wrongly calculated. Well, Your Honor, I believe that in the 56-D affidavit put forth by Judge Sharundala below, our prior counsel, he listed a number of issues in terms of the claims handling by PMA personnel on all three of those cases, especially the Boyden and Gallo. The Hayes case is what we also saw where a statute of limitations was missed. Okay. So I should just look to those — that affidavit is what you're telling me? That affidavit lays out a number of issues with the handling of both, I believe, the Gallo and Boyden cases. Is that the affidavit that was struck? I believe there was another affidavit struck relating to an expert. That's correct. Yeah. With respect to other errors, however, PMA simply failed to meet its burden of proof, and this Court does conduct a de novo review. First of all, we believe that the underlying documents which were submitted in support of the motion for summary judgment did not contain any of the actual damaged documents. They just had basically affidavits from PMA personnel summarizing what was in their files without actually attaching the documents supporting their calculations. And another significant point is that in discovery it was uncovered that PMA basically paid itself twice. They paid themselves a 1.1% or 10% loss conversion on claims retrieving adjusted. Then they paid themselves another fee called an allocated loss adjustment expense. That's what they put under that category, or ALAE. However, this ALAE fee was not defined in the policy. The term was not defined. Did anybody ever ask, is there anything in the record that suggests that Mr. Riccelli, whoever signed the forms, asked what an ALAE, which was in the forms as an expense, meant? I believe it was in the record that Riccelli signed forms acknowledging that ALAE would be charged, but there's no definition in the policy whatsoever. So what we've got is affidavits and deposition testimony from Ms. Moriarty, Ms. Schumer, and Mr. Otto explaining for us on the record on behalf of PMA what that means. Is that correct? Correct. Is there anything on the other side from Riccelli Enterprises that explains what they thought ALAE meant? Other than tearing apart those arguments, no, Your Honor, you're correct. I'd like to go back to the ALAE for a second, because it's a pretty significant charges that were charged to Riccelli. It was not defined in any of the documents, including the initial sign-up documents or the policy itself. And as such, it's not defined. There's an ambiguity. It should be resolved against the party that drafted the document. And when asked if there's any objective basis for calculating these ALAE fees, Ms. Schumer responded and said, not that I'm aware of. There's no documents explaining how these are calculated. Just to be clear, this argument that you're now making is not dependent on the discovery problem. This is an argument that you are making based on the summary judgment record as it stood. It's actually a mix of both, Your Honor, because the ALAE issue would have been shown more. There would have been more documents in the claim repository which we were not allowed to see that would have been explained in there that we would have been able to see, but we were not allowed to see those documents. But, of course, you could have asked, just to follow up on Judge Walker's initial question, you could have asked for these depositions of Ms. Moriarty, Ms. Schumer, and Ms. Strato much earlier. Is that correct? That's correct. That's correct. Although, again, the Court left the door open on a number of occasions with respect to further documentary discovery. It wasn't until the Court shut us down in April of 2015 that we made the appeal. So, a couple of other final points. With respect to the damages ruling, Rosselli was uniquely prejudiced by the courts allowing PMA to rely upon the same loss run information that we were not allowed to see. That's actually in the court's damages decision. I can read that to you for a second if you don't mind. I'll move ahead. Also, the Court placed the burden on Rosselli to first prove mismanagement before allowing a review of the 164 out of 169 files, which seemed prejudicial and unfair to Rosselli. Unless you have any other questions. Thank you very much. Thank you. Good morning, Your Honors. Kevin Hulslander for PMA. Unfortunately, Tony is the third attorney for Rosselli. He hasn't been in this case as long as I have. And I can tell you, Your Honors, that in the beginning, we were working with Rosselli and the judge to work out our discovery disputes. If you read the record of the conferences with the judge, Rosselli agreed to look at Cinch first. And then four months later, we came back before the judge, and Rosselli's counsel said, okay, just show me the five big files. It was Rosselli's counsel's idea, not the judge's. So Rosselli's counsel says, give me the five big files, and specifically I want the attorney communications. So we give them the five big files. We give them almost 1,000 documents. Then they make a motion to compel five months later. And at that time, we believe that the judge had urged them previously already to do a 30B6, a custodian of records deposition, and begin depositions. There was a discovery date of March 2013 in this case. There were no depositions conducted from March of 2013 until June of 2015 after the discovery date. There was nothing that occurred between April 14th, 2014, and April of 2015, other than they wanted some additional attorney documents and communications. So a year goes by. So they're sitting on their hands. They're not doing depositions. They're not telling us. And the judge urged them, and they agreed, initially they agreed, that they would give us specific requests. Please, look at CINCH, and then give us some specific requests with respect to the documents that they actually need. So nothing happens. So we move for summary judgment, which prompted them to ask for an extension of the discovery deadline yet a fourth time. And the judge said, wait a minute. We need to get to trial on this case. It's an old case. I'm not going to let you do any more document discovery. You've had two years to do it. You've not done what you promised you would do. You've not provided us specific requests. You've not provided us for two years. You haven't provided a specific request based on CINCH. And CINCH has an extensive amount of information. You can see it in the record. So at this point, the judge says, okay, do depositions. But he also said at a hearing, page A, 2267 of the record. He also said in the June hearing, he said, look, if something comes out of these depositions, if something happens where they talk about documents that you specifically need, please give me a specific request. They didn't give us a specific request. They claim that they, just like they've never given us a specific request. And then they claim, oh, well, we need all these documents. Well, they sat on their hands for two years. The judge had to move this case along. And we moved for summary judgment. We put together our papers. And in response, they're trying to say things like ALAE isn't defined. Well, this court in Federal Insurance v. Zurich, a 2011 case, has confronted the ALAE definition. It's not defined in any insurance policies. It certainly wasn't defined in the ZURC policy. And the court gave it its plain meaning. And it's very simple. The calculation was losses, which include ALAE, which is specifically pointed out in the plan selection form, which Roselli signed. And then you multiply it times what we call general losses, which would include overhead, salary, that sort of thing. And we multiply that times 10%. So fast forward. Judge Sanis writes a very detailed, thorough decision. It's been since 2010, Your Honors, since we've been paid a dime on this case. We've been paying claims. We've been incurring expenses. Judge Sanis's decision should be affirmed. Thank you. Thank you very much. We'll reserve the decision.